Date signed February 20, 2009



PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| JOHN B. GLACKEN, | : | Case No. 08-23852PM |
| | : | Chapter 7 |
| Alleged Debtor. | : | (Involuntary) |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - : | | |

### MEMORANDUM OF DECISION

Before the court is the "Alleged Debtor's Motion to Dismiss Involuntary Petition" filed by John B. Glacken ("Glacken") and the Oppositions filed by VIS Pennsylvania Avenue Associates, LLC ("VIS"), 6315 Seabrook, LLC ("Seabrook") and The Adams National Bank ("Adams Bank") (collectively, "the Petitioning Creditors"). The Petitioning Creditors commenced this involuntary case against Glacken on October 24, 2008. The issue before the court is whether each of the three Petitioning Creditors is eligible to file this involuntary petition against Glacken.

Section 303(b)(1) of the Bankruptcy Code provides, in pertinent part, that:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title –

> (1) **by three or more entities**, **each of which is** either **a holder of a claim against such person that is not** contingent as to liability or **the subject of a bona fide dispute as to liability or amount**, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $13,475 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.] (emphasis added)

If any one of the Petitioning Creditors' claims is "the subject of a bona fide dispute as to liability or amount," that bona fide dispute renders the Petitioning Creditors ineligible to commence the involuntary filing against Glacken and justifies dismissal.

The court's analysis is complicated by the Bankruptcy Code's omission of a definition for "bona fide dispute." However, the court is guided by the pre-BAPCPA decision of *Schlossberg v. Byrd (In re Byrd)*, 357 F.3d 433 (CA4 2004).[1] The Fourth Circuit in *Byrd* adopted the objective standard for assessing the validity of debt – a standard utilized by the Second, Third, Fifth, Sixth, Seventh and Eighth Circuits.

> Thus a bona fide dispute exists only when there are substantial factual or legal questions that bear upon the debtor's liability. (citations omitted) The bankruptcy court need not resolve the merits of the bona fide dispute, but simply determine whether one exists. (citations omitted)

*Byrd* at 437. Further guidance is found in *Collier on Bankruptcy*, ¶ 303.03[2][b] (15th ed. 2008).

> The application of the objective standard has presented courts with considerable difficulty, some of which may diminish with the [BAPCPA] added language "as to liability or amount." Affirmative defenses to a creditor's claim suggest that a bona fide dispute exists, but the debtor's assertion of a counterclaim that does not go to the merits of the creditor's claim does not necessarily demonstrate a bona fide dispute. Prior to the 2005 amendments, some courts took the position that a debtor's counterclaim disputing the amount of a creditor's claim, and not the legitimacy or the existence of such claim, did not make the creditor's claim the subject of a bona fide dispute. For some courts, the 2005 amendments may change this because it is possible to read the amendment to mean *any* dispute as to *any* amount will disqualify the creditor. Not all courts read the amendment that way. (footnotes omitted).

The Petitioning Creditors have the initial burden of establishing that no *prima facie* disputes exist as to their claims. *Byrd* at 437.

---

[1] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") inserted the phrase "as to liability or amount" after "bona fide dispute" in § 303(b)(1). Earlier cases must be read with this change in mind. Before BAPCPA, while some of the claim may have been disputed, the holder of a claim would be an eligible petitioner if at least a portion was not in dispute in an amount that exceeded the jurisdictional amount required by § 303(b)(1). *IBM Credit Corp. v. Compuhouse Systems, Inc*., 179 B.R. 474, 479 (W.D. Pa. 1995); *Voicesmart Corp. V. Sprint Comm. Co, LP (In re Voicesmart Corp*.), 1998 WL 34064618 (D. N.J. Oct. 30, 1998).

The court starts with the claim of Adams Bank. Adams Bank and Hilltop Development Group, LLC entered into a loan agreement in 2005 to fund a construction project. Glacken and others guaranteed the $8,000,000.00 loan.[2] In 2007, the group entered into a confessed judgment forbearance agreement. In 2008, Adams Bank foreclosed on its interest. Adams Bank filed the confessed judgment, dated August 15, 2008, against Glacken and his wife ("the Glackens") in an approximate deficiency amount of $6,200,000.00. The Glackens attacked the confessed judgment by filing a motion to vacate that is pending before the Montgomery County Circuit Court, Case No. 299157-V. The Glackens assert that they did not confess to judgment as to the alleged default; that the alleged confession was obtained through misrepresentation and fraud; and that the Glackens have a meritorious defense to the confessed judgment through counterclaims against Adams Bank.[3] One could infer the lack of merit to the counterclaims from the fact that it was not raised until after the property was sold at foreclosure, and Adams Bank sought to collect the resulting deficiency.

VIS filed a nine-count complaint in the Montgomery County Circuit Court, Case No. 295778-V, against the Glackens and the Pennsylvania Avenue Group, LLC ("PAG"), an entity allegedly in the business of developing property. Seven of the nine counts were asserted against Glacken (violation of the Maryland Securities Act, breach of fiduciary duty, constructive fraud, unjust enrichment, injunctive relief and fraud in the inducement). As to Glacken, VIS seeks compensatory damages in the amount of $500,000.00 plus interest, costs and attorney's fees and requested a trial by jury.[4] The crux of the complaint is that Glacken, as representative of PAG,

---

[2] Mary Rose Nicol and Frank E. Nicol also guaranteed the loan. The Nicols are debtors in a Chapter 7 case pending in this court, Case No. 08-11555PM.

[3] Maryland law complicated the Adams Bank/Glacken dispute as no counterclaim may be asserted by the Glackens against Adams Bank until the confessed judgment is vacated. *See Boyce v. Plitt*, 335 A.2d 101, 104 (Md. 1975). Thus, the Glackens initiated a separate proceeding against Adams Bank on October 20, 2008, based on their counterclaims. That three-count complaint, also filed in the Montgomery County Circuit Court, Case No. 302779-V, asserted causes based on fraudulent misrepresentation, negligent misrepresentation and breach of covenant of good faith and fair dealing. Adams Bank removed the Glackens' state court action to the United States District Court for the District of Maryland, DKC 08-CV-2928, and answered the complaint. The Glackens then filed a motion to remand the matter to the state court. Adams Bank opposed the motion, which was later withdrawn by the Glackens on January 14, 2009.

[4] The petition states that the amount of the VIS claim is $700,000.00.

fraudulently induced VIS into investing $500,000.00 in PAG to redevelop property.  One example of the alleged misrepresentations made by Glacken is with respect to a "Class A" membership in PAG – an exclusive interest that VIS allegedly purchased for $500,000.00.  The Glackens' allegedly concealed their pre-sale "Class A" membership in PAG from VIS, which would have, according to VIS, prevented it from investing.  Glacken generally denied the material allegations of the complaint.

Seabrook's claim was best described in the testimony of its managing member, Battista Orcino ("Orcino").  Orcino testified that Seabrook was solicited by Glacken at their daughters' soccer game.  Orcino explained that Glacken represented that permits for this development project were in hand and that construction would be completed inside of 18 months.  These representations did not come to fruition.  Orcino testified that Seabrook made the $500,000.00 investment based on Glacken's representations and would not have done so had Glacken been forthright as to permitting and planning.  Orcino also testified that Glacken became increasingly difficult to contact and unresponsive to inquiries.  Seabrook did not file a lawsuit as the members of the group did not have the wherewithal to pursue legal action.

The court was not impressed by Glacken's testimony.  He suffered from a lack of memory of important matters (such as whether he advised representatives of Seabrook of the need for revisions to the plans of the project that was the subject of its investment).  The testimony of Orcino on this point was far more credible.  This discrepancy in credibility also appeared in the conflicting testimony with respect to how the transaction with Orcino came about and Glacken's active role throughout.  Likewise, the court found Glacken's testimony that his connection with PAG was tangential at best was belied by the testimony of the counter-party, Eddie Trujillo.  Glacken's explanation as to how he came about to have a "Class A" membership interest in PAG holds as much water as a sieve.

Yet, there is no question that Glacken disputes the Petitioning Creditors' claims as to liability and amount – Glacken's countersuit against Adams Bank and the attack on the confessed judgment based on the forbearance agreement; his position with respect to the amount of damages attributable to the VIS cause of action; and the damages aspects of Seabrook's claim in that, among other defenses, delay is inherent in construction projects.

As reminded by the *Byrd* court, this court need not resolve the merits of a bona fide dispute but simply determine whether one exists.  As to all three of the Petitioning Creditors'

claims, bona fide disputes as to liability and amount <u>may</u> exist.  The court finds itself faced with the realization that its decision is inextricably intertwined with the resolution of the claims themselves.  *See Byrd* at 438, n. 1 ("Substantial questions as to a debtor's liability are unlikely to remain where a debtor has ceased, or can no longer continue, contesting his liability." ).  As stated by *Collier on Bankruptcy*, ¶ 303.03[2][b], "[C]ongress wanted creditors to settle disputed claims outside of bankruptcy, given the serious adverse impact of an involuntary petition on an alleged debtor."  The court finds that the parties would best be served were the court to abstain from the exercise of jurisdiction to allow the parties to settle their claim outside of bankruptcy. Keeping these four state law disputes in this court benefits no one in the long run.  The parties have the right to trial by jury on many of the issues presented.  The court finds that the record is sufficiently developed and the underlying issues sufficiently argued to enable this court to make this determination under 11 U.S.C. § 305(a).  *In re Kujawa*, 224 B.R. 104, 107-8 (E.D. Mo. 1998).

An appropriate order will be entered.


cc:    John B. Glacken
       10213 Ridgemoor Drive
       Silver Spring, MD 20901

       Tracey Michelle Ohm
       Stinson Morrison Hecker LLP
       1150 18th Street NW
       Suite 800
       Washington, DC 20036

       VIS Pennsylvania Avenue Associates, LLC
       c/o Craig Palik
       6411 Ivy Lane
       Suite 200
       Greenbelt, MD 20770

Craig Palik
6411 Ivy Lane
Suite 200
Greenbelt, MD 20770

Daniel J. Collins
McNamee Hosea
6411 Ivy Lane
Suite 200
Greenbelt, MD 20770

James Greenan
6411 Ivy Lane
Suite 200
Greenbelt, MD 20770

6315 Seabrook, LLC
c/o James M. Greenan
McNamee Hosea, et. al.
6411 Ivy Lane
Suite 200
Greenbelt, MD 20770

Adams National Bank
c/o Robert E. Greenberg
Friedlander Misler
1101 17th St., NW
Suite 700
Washington, DC 20036

Robert E. Greenberg
Friedlander, Misler et al.
1101 Seventeenth St., NW
Ste. 700
Washington, DC 20036-3919

**End of Memorandum of Decision**